UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| GUADALUPE (ROBERT) MARES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:06-cv-0060-JDT-WGH |
| | ) | |
| | ) | |
| CAESARS ENTERTAINMENT, INC., | ) | |
| HARRAH'S ENTERTAINMENT, INC., | ) | |
| HARRAH'S OPERATING COMPANY, | ) | |
| INC., CAESARS WORLD INC., ROMAN | ) | |
| ENTERTAINMENT CORPORATION OF | ) | |
| FLORIDA, CAESARS RIVERBOAT | ) | |
| CASINO, LLC, f/k/a RDI/CAESARS | ) | |
| RIVERBOAT CASINO, LLC f/k/a HARCO | ) | |
| ENTERTAINMENT COMPANY, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**Entry on Plaintiffs' Motion to Certify Collective Action Status (Doc. No. 29)
and Motion for Approval of Proposed Class Notice (Doc. No. 31)[1]**

Plaintiff Guadalupe "Robert" Mares brings this action against Defendants under
the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219, purportedly on
behalf of himself and a class of others similarly situated.  He alleges that the
Defendants willfully violated the FLSA by failing to pay wages due including minimum
wages for each hour worked and overtime pay for mandatory, off-the-clock, pre-shift
meetings and other alleged mandatory on-duty time.  He seeks permanent injunctive

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

relief and damages.  Mr. Mares requests certification of a collective action under the FLSA and approval of a proposed class notice.  Defendants oppose the requests.

## I.  BACKGROUND

Plaintiff Guadalupe "Robert" Mares has been employed as a security officer by Defendant Caesars Riverboat Casino, LLC f/k/a RDI/Caesars Riverboat Casino, LLC f/k/a Harco Entertainment Company, LLC ("Caesars") at its Caesars Indiana Glory of Rome casino gambling facility in Elizabeth, Indiana, from October 12, 1998 until at least August 2006.  (Mares Aff. ¶ 4; Answer ¶ 10.)  He alleges that the Defendants own and operate 39 casino gambling facilities in the United States.  (Compl. ¶ 5.)  Defendants deny this allegation, except they admit that Caesars owns a casino in Indiana (Answer ¶ 5) and that Harrah's Operating Company, Inc. owns a casino in Reno, Nevada (Winter Aff. ¶ 4).  According to Defendants, the remaining Defendants are holding companies only.  (Winter Aff. ¶ 5.)

Mr. Mares alleges that during most of his tenure at Caesars, Caesars willfully violated the FLSA in various ways.  (Mares Aff.  ¶ 5.)[2]  First, according to Mr. Mares, all security officers at Caesars were required to attend pre-shift meetings of approximately fifteen minutes duration before being allowed to clock-in for their scheduled shift and, until recently, they were not compensated for their attendance at such meetings.  (Id. ¶¶ 6-10.)  Mr. Mares claims that in 2006, after Caesars learned of the possibility of this

---

[2]  Mr. Mares asserts that "the Defendants" have willfully violated the FLSA and makes other such statements presumably regarding all Defendants.  But for reasons discussed *infra*, the focus is on what happened at Caesars's facility in Elizabeth.

lawsuit, the security officers were notified that the pre-shift meetings were not mandatory (*id.* ¶ 10), but to "remember who writes your evaluations" (*id.* ¶ 11), which left him under the impression that the meetings were still mandatory (*id.* ¶ 12).

It is also alleged that during the relevant time Caesars has required all security officers to be "on-duty" and to respond to customer inquiries from the time they arrive on the premises until the time they reach the pre-shift meetings.  (Mares Aff. ¶ 13.)  The officers are prohibited from talking on their cellular phones or engaging in other personal activity as they walk from Caesars's parking garage until they reach the area designated for the pre-shift meetings.  (*Id.* ¶ 14.)  The security officers are expressly told that they are on-duty from "car-to-car," which means they are on-duty from the time they leave their vehicles before their scheduled shift until they return to their vehicles after their scheduled shift.  (*Id.* ¶ 15.)  Mr. Mares alleges that he has not been compensated for the "car-to-car" duty time and, based on conversations with other security officers, he believes they have not been compensated either.  (*Id.* ¶ 15.)  It is his understanding, based on conversations with others, that the uncompensated pre-shift meetings and "car-to-car" duty time was the policy, practice, or both, at other Caesars-owned facilities. (*Id.* ¶ 17.)

Approximately thirteen other current or former employees of the Defendant(s) have filed opt-in authorization forms in this case.  Plaintiffs request certification of a collective action for the following:

> Current and former security officers (including emergency medical technicians) who currently work or previously worked at any of the

> Defendants' casino gambling facilities at any time from April 20, 2003 until
> the present, and who were not paid for all time worked **and** were not paid
> overtime wages for work in excess of forty (40) hours per week.

(Pl.'s Mot. Certify Collective Action 1) (emphasis added).  Mr. Mares contends that the

members of this class are similarly situated to those persons who already have opted

into this action.

## II.  MOTION TO CERTIFY COLLECTIVE ACTION

The FLSA provides that an action may be maintained "by any . . . employee[] for

and in behalf of himself . . . and other employees similarly situated" for damages from

an employer who has failed to pay overtime as required under the Act.  29 U.S.C. §

216(b).  Such an action is known as a collective action.  *See Harkins v. Riverboat*

*Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004).  A collective action serves the ends of

avoiding a multiplicity of duplicate actions and promoting the FLSA's broad remedial

goals.  *See generally Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 172-74 (1989).

A collective action differs from a Rule 23 class action.  Potential plaintiffs in a collective

action must join the action by "opting in," whereas, a class action includes any potential

plaintiff who does not "opt out."  29 U.S.C. § 216(b) ("No employee shall be a party

plaintiff to any such action unless he gives his consent in writing to become such a party

and such consent is filed in the court in which such action is brought."); Fed. R. Civ. P.

23(a).

To implement the opt-in provision, the court has the discretion to facilitate notice

to potential plaintiffs to a FLSA collective action.  *See Hoffmann-LaRoche, Inc. v.*

4

*Sperling*, 493 U.S. 165, 169 (1989); *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) (stating that the court in a FLSA collective action has a "modest duty and power . . . to regulate the content and distribution of the notice to potential class members"). Authorization of notice serves the interests noted above and promotes the efficient resolution of the case. *See Hoffmann-LaRoche*, 493 U.S. at 172-74.

When deciding whether to certify a collective action, the court considers the evidence to determine whether the representative plaintiff has made an initial threshold showing that he is similarly situated to the employees whom he seeks to represent. *Coan v. Nightingale Home Healthcare, Inc.*, No. 1:05-cv-0101-DFH-TAB, 2005 WL 1799454, at *1 (S.D. Ind. June 29, 2005); *Carter v. Indianapolis Power & Light*, No. 1-02-cv-1812-SEB-VSS, 2003 WL 23142183, at *3 (S.D. Ind. Dec. 23, 2003). This is a "relatively modest" showing. *Coan*, 2005 WL 1799454, at *1; *see also Carter*, 2003 WL 23142183, at *3. Neither the FLSA, the Supreme Court, nor the Seventh Circuit has provided guidance on how the court is to determine whether the representative plaintiff is "similarly situated" to the potential plaintiffs. However, district courts in the Seventh Circuit have adopted a two-step approach. *See, e.g.*, *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006); *Veerkamp v. U.S. Sec. Assocs., Inc.*, No. 1:04-cv-0049-DFH-TAB, 2005 WL 775931, at *2 (S.D. Ind. Mar. 15, 2005). This approach is as follows:

> In the first step . . . the plaintiff must demonstrate a reasonable basis for believing that []he is similarly situated to potential class members. If the plaintiff makes this showing, the court conditionally certifies a class, authorizes notice and the parties conduct discovery. At the close of discovery, the defendant may make a motion for

5

> decertification, at which point the court examines in detail the evidence and arguments submitted by the parties on the question of similar situation.  If the court finds that any of the opt-in plaintiffs are not similarly situated to the representative plaintiff, it may dismiss them without prejudice.  Also, the court may decertify the entire class if none of the class members are similarly situated.  However, if the plaintiff demonstrates that the class members are similarly situated, the case proceeds to trial as a class action.

*Austin*, 232 F.R.D. at 605.  The court applies this approach in this case.

In support of the request for an expansive collective action as to all Defendants and a "company-wide" policy, the Plaintiffs offer Mr. Mares's conclusory assertion that "based upon conversations with others" he believes similar policies and practices were in effect at other Caesars-owned facilities.  (Mares Aff. ¶ 17.)  The Plaintiffs also point to the existence and settlement of a 1999 lawsuit by Caesars Palace security officers against the casino's parent – not a defendant here – in U.S. District Court in Nevada, *Abernathy v. Starwood Hotels & Resorts Worldwide, Inc.*, 2:990cv00788-LRH-PA.  As well, they rely on the assertions of Stanley Marchand, a former security officer at a Caesars casino in Gulfport, Mississippi.  None of this suffices to carry the Plaintiffs' modest burden of showing sufficient similarity to *all* members of the broad class they seek to represent.

Courts have required plaintiffs to offer admissible evidence to support their claims that those they wish to represent are similarly situated.  *See, e.g., Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 866-67 (S. D. Ohio 2005) (striking inadmissible hearsay from affidavits supporting motion for collective action); *McElmurry v. US Bank Nat'l Ass'n*, No. CV-04-642-HU, 2005 WL 2078302, at *11 (D. Or. July 29, 2005)

6

(stating plaintiffs must support their claims that others are similarly situated with admissible evidence); *Richards v. Computer Sciences Corp.*, No. 3-03-CV-00630(DJS), 2004 WL 2211691, at *1-2 (D. Conn. Sept. 28, 2004) (striking portions of affidavits submitted in support of motion to proceed as a collective action that contained inadmissible hearsay or were unsupported by personal knowledge).  Unsupported allegations are insufficient to establish that the putative plaintiffs are similarly situated. *Threatt v. Residential CRF, Inc.*, 1:05CV117 WCL, 2005 WL 4631399, at *5 (N.D. Ind. Aug. 31, 2005); *McElmurry*, 2005 WL 2078302, at *11.

Mr. Mares's understanding based on alleged conversations with unidentified persons is insufficient to establish personal knowledge as to the policies and practices in effect at Caesars-owned facilities other than the one at which he has worked.  Neither the mere existence of the Nevada lawsuit nor its settlement sufficiently substantiates the allegations against each Defendant or as to a "company-wide" practice.[3]  Not every suit is meritorious and a lawsuit may be settled for any number of reasons not all of which necessarily include admission of liability on the part of the defendant.  As well, there is little, if any, overlap in time between the alleged violations in this case – Plaintiffs seek to notify security officers who worked from April 20, 2003 to the present – and *Abernathy v. Starwood* – a case filed in 1999 and resolved in 2003.  Even if there is a sufficient connection between the Defendants in *Abernathy* and those here, unlawful practices at an earlier time need not establish the same unlawful practices at a later date.  While Mr. Marchand states that he was never paid for attending pre-shift

---

[3]  Plaintiffs claim Starwood owned Defendant Caesars World, Inc. (Pls.' Mem. Supp. 3.)

meetings, he does not express any views about whether the other security officers employed at the same casino as he were paid for such meetings.  (The casino was destroyed by Hurricane Katrina in August 2005 and no longer exists.)  In the court's view, a single employee's experience is insufficient to warrant the conclusion that other employees had similar experiences.  Thus, the focus will be on what Mr. Mares's employer, Caesars, allegedly did or failed to do at the facility where Mr. Mares worked – the casino facility in Elizabeth, Indiana.

The Defendants argue that other than Caesars, they are improper parties since Mr. Mares was not employed by them and they except for Harrah's Operating Company, Inc. employed no one within the putative class.  Because the court has determined that the collective action should be properly limited to the Caesars facility in Elizabeth, Indiana, it need not reach this issue now.  Whether any defendant is a proper party may be addressed through a dispositive motion.  Notice will be limited to security officers who worked at Caesars's facility in Elizabeth.

The Defendants contend that the Plaintiffs cannot prove a FLSA violation.  They suggest that Caesars voluntarily paid security officers for a meal period and properly offset the paid meal period against the pre-shift activities.  A court, however, must be careful not to evaluate the merits of the case when determining whether to give notice to other employees.  *See Hoffmann-La Roche*, 493 U.S. at 174 (indicating that courts considering certification "must be scrupulous to respect judicial neutrality . . . [and] must take care to avoid even the appearance of judicial endorsement of the merits of the action"); *Coan*, 2005 WL 1799454, at *1 (quoting *Hoffmann-LaRoche*).  Were it beyond

8

cavil that the Plaintiffs could not prove their claims, then it would be senseless to inform others of their right to join a doomed case.  That is not this case.  The matters regarding offsetting will need to be addressed after further discovery.

In arguing that a nationwide collective action would be inappropriate, the Defendants appear to concede that the security officers at Caesars's casino in Elizabeth, Indiana, are similarly situated to the Plaintiffs.  The Defendants write: "Plaintiff Mares and the opt-in plaintiffs are homogeneous. . . .  All of the existing Plaintiffs work or worked at the same property and reported to the same Security Director.  The existing Plaintiffs exhibit commonality of circumstances with one another. . . ."  (Defs.' Opp'n Pls.' Mot. Certify Collective Action Status 12-13.)  However, the Defendants then argue that even conditional certification of a class of security officers who worked at Elizabeth would be inappropriate because individual factual inquiries regarding their meal breaks will predominate.  As stated, the matter of offsetting pre-shift activities by meal breaks relates to the merits of Plaintiffs' claims and the court should not delve into the merits at this stage, *see Coan*, 2005 WL 1799454, at * 1 – particularly because the outcome may not be as clear as the Defendants suggest it is. The Defendants submitted the affidavit of Tom Hill, Caesars's Director of Security, who states that since about April 2000, security officers have received a paid half hour meal break each shift.  (Hill Aff. ¶ 2.)  However, the Plaintiffs submitted what appears to be the Caesars Indiana Team Member Handbook, dated October 1, 1998, which contains a provision indicating: "It is not necessary to clock out for meal breaks.  This is deducted automatically from your daily time."  (Pls.' Reply, Ex. E at 8.)  They also submitted what

9

appears to be the Team Member Handbook, dated January 1, 2004, which refers to "a paid 30 minute meal break." (*Id.*, Ex. D at 5.)  These exhibits raise a permissible inference that the 30 minute meal breaks were unpaid at least until January 1, 2004. Defendants argue that Plaintiffs' assertions that meal breaks were unpaid before that date are not based on any personal knowledge, but merely on the employment policies. The Defendants do not dispute that the policies are as reflected in the exhibits tendered. So the court will take these exhibits into account at this stage in deciding whether the Plaintiffs have made the minimal showing required for conditional certification.

The court finds that Mr. Mares has carried his burden of making the relatively modest threshold showing that he is similarly situated to at least some of the employees whom he seek to represent, namely, current and former security officers who work or worked at the Caesars casino gambling facility in Elizabeth, Indiana, from April 20, 2003 until the present and who were not paid for all time worked and/or were not paid overtime wages for work in excess of forty hours per week.[4]  While the decision in *Dudley v. Texas Waste Systems, Inc.*, No. Civ.A. SA-05-CA-0078, 2005 WL 1140605, at *2  (W.D. Tex. May 16, 2005) (denying motion for collective action where analysis of improper lunch break adjustments would require individual testimony whether each driver regularly took lunch breaks or worked through lunch and needed to be compensated), may suggest a different conclusion, that decision seems to hinge on an

---

[4]  Plaintiffs' motion states ". . . who were not paid for all time worked *and* were not paid overtime . . ." (Pls.' Mot. Certify 1) (emphasis added).  However, the use of "and" is an apparent oversight or typographical error.  Given the Plaintiffs' allegations, they must have intended to use "and/or."  So the court substitutes this language on its own.

evaluation of the merits of that case.  As stated, district courts should be careful not to evaluate the merits of the claims at the initial certification stage.  *See Coan*, 2005 WL 1799454, at *1.

Defendants have pointed to *Reich v. Homier Distributing Co.*, 362 F. Supp. 2d 1009 (N.D. Ind. 2005), and *Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000), among others, to support their argument that conditional certification is improper where the court must undertake fact intensive determinations.  However, the factual inquiries in those cases involved the specific job duties of the potential plaintiffs; here, there is no allegation that any of the security officers had different duties.  It also appears that more extensive discovery may have been undertaken in some of the cited cases than has been conducted here.  *See, e.g.*, *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274 (N.D. Ala. 2004) (referring to the "extensive evidence" on the issue of whether the potential class members are similarly situated).  And if individual matters tend to predominate, the certification at this stage is conditional and subject to a motion for decertification.  The court and parties will be better able to ascertain whether individual questions will predominate after further discovery.  Thus, the court finds that notice to security officers employed at Caesars casino in Elizabeth, Indiana, within the relevant time is appropriate.  Therefore, the motion to certify collective action is **GRANTED IN PART**.

### III.  MOTION FOR APPROVAL OF PROPOSED CLASS NOTICE

Defendants make no objection to the Plaintiffs' proposed notice which is attached as Exhibit A to the motion for approval of proposed class notice.  The form of notice and opt-in authorization form meet the court's approval, with the few modifications noted below.

As to the Notice:

1.      Notice shall be sent to the following:

Current and former security officers (including emergency medical technicians) who currently work or previously worked at the casino gambling facility of Caesars Riverboat Casino, LLC (f/k/a RDI/Caesars Riverboat Casino, LLC f/k/a Harco Entertainment Company, LLC) in Elizabeth, Indiana, at any time from April 20, 2003 until the present, and who were not paid for all time worked **and/or** were not paid overtime wages for work in excess of forty (40) hours per week.

2.      In Section II, the sentence "The Court has not yet made any decision or finding on whether Plaintiffs' claims have merit." shall be in bold type.

3.      The deadline for opting-in and returning the Consent Form will be sixty (60) days from the date of mailing of the Notice by Plaintiffs' counsel.

As to the Opt-In Authorization Form, so it is consistent with the Notice, the last sentence shall state that the deadline is the date the form is returned and postmarked.

Plaintiffs' counsel shall mail the Notice as soon as practicable after receiving the list of employee names and addresses from the Defendants.

12

## IV.  CONCLUSION

The motion to certify a collective action (Doc. No. 29) is **GRANTED IN PART** and the motion for approval of a proposed class notice (Doc. No. 31) is **GRANTED IN PART** consistent with the above.  This certification is conditional.  Following the close of discovery, the Defendants may seek decertification.

The Plaintiffs' request that the court order the Defendants to produce a list of the class members, including full name and last known mailing address for each, is **GRANTED**.  Defendants shall produce to Plaintiffs' counsel within twenty days of the date of this entry a list of those employees within the class described above, including full name and last known mailing address for each.

ALL OF WHICH IS ENTERED this 10th day of January 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William G. Hussmann, Jr.

Robert Gregg Hovious
Tachau Maddox Hovious & Dickens
ghovious@tmhd.com

Lawrence L. Jones II
Tachau Maddox Hovious & Dickens
ljones@tmhd.com

Todd M. Nierman
Littler Mendelson
tnierman@littler.com

Rick D. Roskelley
Littler Mendelson
rroskelley@littler.com

Dustin D. Stohler
Littler Mendelson
dstohler@littler.com